UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| | ) Case No. 1:16-CR-2-1 |
| v. | ) JUDGE TRAUGER |
| | ) |
| EARON SILER | ) |

DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE

Earon Siler has served over four years for possession with intent to distribute methamphetamine. He suffers from high blood pressure and asthma, and his medical condition puts him at high risk of serious complications from Covid-19. He is at a BOP facility where the virus is already beginning to spread.

Mr. Siler respectfully moves this Court to reduce his sentence under 18 U.S.C. § 3582(c)(1)(A)(i), which allows such a reduction based on "extraordinary and compelling reasons." Since he is at high risk of severe harm from Covid-19, he asks that this Court to reduce his sentence by ordering his immediate release, possibly followed by a period in home confinement.

I.  Statutory framework for sentence reduction under 18 U.S.C. § 3582(c)(1)(A)(i)

The compassionate release statute grants sentencing courts authority to reduce an otherwise final term of imprisonment for "extraordinary and compelling reasons." 18 U.S.C. § 3582(c)(1)(A)(i). The statute provides:

(1) in any case--

(A) **the court**, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of

Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, **may reduce the term of imprisonment** (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), **after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that--**

    (i) **extraordinary and compelling reasons warrant such a reduction**; . . .

\*\*\*\*\*

**and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.**

18 U.S.C. § 3582(c)(1)(A) (emphasis added). Thus, the statutory requirements for sentence reduction are that the court (1) find extraordinary and compelling reasons for the reduction, (2) consider the relevant sentencing factors under 18 U.S.C. § 3553(a), and (3) ensure any reduction is consistent with applicable policy statements.

## II. Statement of facts

In 2015 and early 2016, a confidential informant conducted controlled buys of methamphetamine from Mr. Siler. (Presentence Report (PSR) at ¶ 4-8.) The postal service also intercepted two packages of methamphetamine that Mr. Siler attempted to send. (*Id.*) He plead guilty to one count of possession with intent to distribute methamphetamine and was given a below-guidelines sentence of 120 months. (R. 96.)

Mr. Siler's presentence report documented his asthma and prescription for albuterol as well as his high blood pressure. (PSR at ¶ 72-77.) A letter from Mr. Siler indicated that his asthma has gotten worse, and that he also has the sickle cell

2

Case 1:16-cr-00002   Document 99   Filed 04/28/20   Page 2 of 12 PageID #: 180

trait. His fiancé informed counsel that Mr. Siler had a mild stroke while incarcerated in Kentucky.

Mr. Siler stated in his letter that he submitted an Inmate Request to Staff ("Copout") for his medical records on approximately April 10, 2020. He has not heard back. He also he requested compassionate release from the Warden but has not received a response. Counsel has sent a request to him to provide a copy of his submission to the Warden.

III. Argument

    A. **The Court should waive the 30-day waiting period.**

The statute says a district court can grant a defendant's compassionate-release motion "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A).

Mr. Siler submitted a request for compassionate release from the Warden and has not received a response. But this Court need not wait to act. As courts in this precise situation have recognized, an exception to an exhaustion requirement must exist "where a claimant's interest in having a particular issue resolved promptly is so great that deference to the agency's judgment is inappropriate." *Mathews v. Eldridge,* 424 U.S. 319, 330 (1976). Consequently courts have recognized there must be three possible exceptions to the compassionate-release exhaustion requirement. *United States v. Zuckerman,* 2020 U.S. Dist. LEXIS

59588, *6 (S.D.N.Y. Apr. 3, 2020); *United States v. Perez,* 2020 U.S. Dist. LEXIS 57265 (S.D.N.Y. Apr. 1, 2020); *United States v. Colvin*, 2020 U.S. Dist. LEXIS 57962, *2 (D. Conn. Apr. 2, 2020). As explained by the *Zuckerman* court:

> First, exhaustion may be unnecessary where it would be futile, either because agency decisionmakers are biased or because the agency has already determined the issue. Second, exhaustion may be unnecessary where the administrative process would be incapable of granting adequate relief. Third, exhaustion may be unnecessary where pursuing agency review would subject plaintiffs to undue prejudice.

*Zuckerman,* 2020 U.S. Dist. LEXIS 59588 at *7 (internal quotation marks and citations removed). *See also United States v. Scparta*, 2020 U.S. Dist. LEXIS 68935, *2, 14-25 (S.D.N.Y. Apr. 20, 2020) (waiving 30-day waiting period and ordering immediate release for defendant slated by BOP for release after a 14-day quarantine because the BOP's "Kafkaesque" quarantine system left him at substantial risk of suffering irreparable injury).

In this extremely unusual time of pandemic, these exceptions—either individually or collectively—apply for a simple reason: When a defendant who is especially vulnerable to the virus is being held in a BOP facility where the virus is already present, that defendant lacks the ability to protect him or herself from irreparable harm—possibly death—that could easily occur before the 30-day exhaustion period even expires. *Zuckerman,* 2020 U.S. Dist. LEXIS 59588 at *11; *see United States v. McCarthy*, 2020 U.S. Dist. LEXIS 61759, *9 (D. Conn. Apr. 8, 2020) (finding exception to exhaustion and explaining "[e]ven a few weeks' delay carries the risk of catastrophic health consequences for McCarthy"). This holds true for Mr. Siler. Due to his high blood pressure and asthma, he is especially vulnerable

4

to the virus; it is already present in Atlanta USP and he could easily suffer catastrophic health consequences from the virus in the coming days. *See* page 9, *infra* (further discussing high-risk status).

All available evidence indicates that Covid-19 is already starting to sweep through the BOP facilities, which, according to public-health experts, "are tinderboxes ready to explode and endanger our entire community."[1] By today's count there are 1,313 federal inmates and 335 staff who have tested positive for the virus and are currently sick with it; there are 404 inmates and 132 staff who tested positive and recovered; and there are 30 inmates who have died from the virus.[2] Yet these are just the numbers of confirmed positive tests—and tests are in short supply. *United States v. Rodriguez,* 2020 U.S. Dist. LEXIS 58718, *23 (E.D. Pa. Apr. 1, 2020) (discussing BOP's inadequate response to Covid-19).; Eric Heisig, *Judge Grills Federal Prisons Lawyer on Lack of Coronavirus Tests,* Cleveland.com (Apr. 18, 2020) (stating that FCI Elkton, one of the hardest-hit facilities, has tested 59 of its 2,000 inmates, and receives only 25 tests per week).[3]

The experience from the past two weeks shows that the virus can sweep through a prison in far less than 30 days. For example, in the case of *United States v. Charles Edwards,* No. 3:13-cr-12 (M.D. Tenn.), the defendant Edwards filed for

---

[1] Open Letter to President Trump from Public-Health Experts, https://www.publichealthpublicsafety.org
[2] https://www.bop.gov/coronavirus/.
[3] https://www.cleveland.com/court-justice/2020/04/judge-grills-federal-prisons-lawyer-on-lack-of-coronavirus-tests-at-ohio-facility-in-wake-of-trumps-claim-that-anybody-can-get-tested.html

5

Covid-19-based compassionate release on April 14, 2020, and at that time his prison of 1,500 inmates (FMC Fort Worth) had just one inmate who had tested positive for the virus. (No. 3:13-cr-12, Motion, R.475, PageID# 2110 (citing BOP website).)[4] By April 26, his prison had 232 inmates who tested positive for the virus. (No. 3:13-cr-12, Notice, R.479, PageID# 2175 (citing BOP website).) Once the virus got a foothold in the prison, it expanded rapidly: in less than two weeks, the rate of infection for the prison's inmates went from 1-in-1,500 to 1-in-6.5. According to a journalistic report, "[f]ederal officials have largely given up testing at half dozen prisons where serious outbreaks have erupted, saying they assume that all staff and prisoners have been exposed[.]" Cary Aspinwall and Joseph Neff, "These Prisons are Doing Mass Testing for COVID-19—and Finding Mass Infections," The Marshall Project (Apr. 24, 2020.)

Mr. Siler could easily suffer catastrophic health consequences from Covid-19. For that reason, the Court should waive the 30-day waiting period.

Finally, it has also become clear that the BOP will not endorse a compassionate release motion based on an elevated risk from Covid-19. (*See* Ex. A, Petrossi Denial Letter.) That is because the BOP's Program Statement does not make a pandemic "a qualifying factor that would warrant a motion be filed with the sentencing court." (*Id.*) Therefore, futility likewise excuses any need to wait 30 days to see whether the BOP will endorse the filing of this motion. *See Samy v.*

---

[4] Court records are generally a proper subject of judicial notice. Fed. R. Evid. 201(d), 1972 Advisory Committee Notes; Wright & Graham, *Federal Practice and Procedure: Evidence* 2d § 5016.4 at nn. 14-16, 61-66 (2005).

*United States*, No. 16-20610-1, 2020 U.S. Dist. LEXIS 66864, at *6 (E.D. Mich. Apr. 16, 2020) (finding no need to wait 30 days "where it would be futile . . . because the agency has already determined the issue").

> B. Mr. Siler's high risk of serious health consequences due Covid-19 amount to an extraordinary and compelling reason to reduce his sentence.

A district court can reduce a final sentence if it finds that "extraordinary and compelling reasons warrant such a reduction" and "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A). The Sentencing Commission's applicable policy statement simply restates the text of the statutory provision. U.S.S.G. § 1B1.13, p.s.

The commentary to the policy statement identifies some reasons that are typically good candidates for amounting to extraordinary and compelling reasons for a sentence reduction: suffering from a terminal illness, suffering from an illness that is seriously debilitating, suffering as an elderly inmate from serious age-related deterioration to physical or mental health, or needing release to care for dependents who have suddenly lost their caregiver. U.S.S.G. § 1B1.13, comment. n.1(A)-(C). In addition, in Note 1(D), the commentary advises that "Other Reasons" can also suffice. Although Note 1(D) is written such that the BOP would have to pre-approve any such "other reason," such BOP approval is now inconsistent with the text of § 3582(c)(1)(A) as modified by First Step Act because the Act expressly took from the BOP any gatekeeping role. Thus, in the wake of the First Step Act, a district court now has the authority to determine for itself, without BOP approval,

7

what amounts to any other "extraordinary and compelling reason" under the statute. *See United States v. Young*, 2020 U.S. Dist. LEXIS 37395, *16-17 (M.D. Tenn. Mar. 4, 2020) (so holding);[5] *United States v. Brown*, 411 F. Supp. 3d 446, 449 (S.D. Iowa 2019); *United States v. Cantu*, No. 1:05-CR-458-1, 2019 WL 2498923, at *4 (S.D. Tex. June 17, 2019); *United States v. Redd*, 2020 WL 1248493, at *6 (E.D. Va. Mar. 16, 2020); *United States v. Fox*, No. 2:14-cr-03-DBH, 2019 WL 3046086, *3 (D. Me. July 11, 2019); *United States v. Perez*, No. 88-10094-1-JTM, 2020 WL 1180719, at *2 (D. Kan. Mar. 11, 2020) ("[A] majority of federal district courts have found that the most natural reading of the amended § 3582(c) and § 994(t) is that the district court assumes the same discretion as the BOP director when it considers a compassionate release motion properly before it." (internal quotation marks omitted)).

Exercising this new authority, several courts have held that especially high risk of Covid-19 complications to a prisoner can constitute an extraordinary and compelling reason for compassionate release. *See United States v. Gonzalez,* 2020 U.S. Dist. LEXIS 56422, *9-10 (E.D. Wash. Mar. 31, 2020); *United States v. Muniz,* 2020 U.S. Dist. LEXIS 59255, *3-4 (S.D. Tex. Mar. 30, 2020); *United States v. Rodriguez,* 2020 U.S. Dist. LEXIS 58718, *5 (E.D. Pa. Apr. 1, 2020); *United States v. McCarthy*, 2020 U.S. Dist. LEXIS 61759, *13-14 (D. Conn. Apr. 8, 2020). The courts so finding have emphasized that Covid-19 is bound to spread through BOP

---

[5] This order was modified on April 13, 2020, by removing one phrase that indicated the government conceded this point.

facilities, that inmates are powerless to adequately protect themselves from Covid-19, and that a high-risk inmate could suffer "profound" health consequences while, depending on the circumstances, the value of extracting the full custodial punishment from the inmate may be "marginal." *Rodriguez*, 2020 U.S. Dist. LEXIS 58718 at *26; *see United States v. Perez*, 2020 WL 1546422, *2 (S.D.N.Y. Apr. 1, 2020) (following similar reasoning). Courts have so held even in cases where the defendant has a substantial amount of time left to serve on the sentence. *See, e.g., United States v. Hansen*, 2020 U.S. Dist. LEXIS 61946 (E.D.N.Y. April 8, 2020) (granting release 11 years into a 20-year sentence); *United States v. Bess*, Case No. 1:16-cr-156, 2020 U.S. Dist. LEXIS 71056 (W.D.N.Y. Apr. 22, 2020) (granting release 41 months into an 84-month sentence).

Mr. Siler's risk of suffering serious and irreparable consequences to his health are high due to his high blood pressure and asthma. According to the Center for Disease Control (CDC), people who have asthma are especially vulnerable to and at higher risk for serious complications from Covid-19. *See* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/asthma.html. Further, as researchers learn more about this virus, high blood pressure is increasingly seen as a serious complicating factor. *See, e.g.,* Erika Edwards, *In sickest COVID-19 patients, underlying conditions are common, large study finds: High blood pressure, obesity and diabetes are risk factors for severe cases*, NBC News (April 22, 2020), https://www.nbcnews.com/health/health-news/sickest-covid-

9

19-patients-underlying-conditions-are-common-large-study-n1189906.[6] Mr. Siler's medical condition put him at great risk for complications should he contract the virus.

Covid-19 has already reached Atlanta USP—which today shows 7 inmates and 6 staff testing positive[7]—where Mr. Siler is housed. The facility is evidently not managing the pandemic effectively. A 39-year old federal prison employee, Robin Grubbs, at Atlanta USP died and later tested positive for COVID-19, prompting other employees to speak up about unsafe conditions there. Cassidy McDonald, *She was promoted a month before her death. Coworkers say she was never moved into her new role, away from sick inmates*, CBS News (April 20, 2020), available at https://www.cbsnews.com/news/coronavirus-death-robin-grubbs-atlanta-federal-penitentiary-workers-criticize-covid-19-response. Four correctional officers there discussed a lack of access to protective equipment, and inconsistent communication about staff and inmate infections. *Id.* Up until her death, employee Grubbs

---

[6] The latest research indicates COVID-19 may target blood vessels:

> If COVID-19 targets blood vessels, that could also help explain why patients with pre-existing damage to those vessels, for example from diabetes and high blood pressure, face higher risk of serious disease. Recent Centers for Disease Control and Prevention (CDC) data on hospitalized patients in 14 U.S. states found that about one-third had chronic lung disease—but nearly as many had diabetes, and fully half had pre-existing high blood pressure.

Meredith Wadman, *How does coronavirus kill? Clinicians trace a ferocious rampage through the body, from brain to toes*, Science (April 17, 2020), https://www.sciencemag.org/news/2020/04/how-does-coronavirus-kill-clinicians-trace-ferocious-rampage-through-body-brain-toes.
[7] https://www.bop.gov/coronavirus/.

continued to work among inmates. *Id.* Many employees there were not given masks or were given only one mask per week, and "employees — many of whom are charged with patting down hundreds of inmates per day — could not reliably access gloves." *Id.* One correctional officer at Atlanta USP said, "I don't feel safe." *Id.*

Coupled with Mr. Siler's medical condition, his current residence at Atlanta USP under these conditions exposes him to an unacceptably high risk of contracting COVID-19 and becoming seriously ill or dying. This Court should conclude that the fact that Mr. Siler faces this risk constitutes an extraordinary and compelling reason for compassionate release.

### C. Under § 3553(a), the Court should release Mr. Siler and possibly require him to serve a period in home confinement.

Where, as here, extraordinary and compelling reasons are established, the Court must consider the relevant sentencing factors in § 3553(a) to determine whether a sentence reduction is warranted. 18 U.S.C. § 3582(c)(1)(A)(i).

Mr. Siler has served four years for his nonviolent offense of drug trafficking. If released, he can reside with his fiancé Ashley Martinez in Decherd, TN. Counsel is providing information regarding Ms. Martinez to the U.S. Probation Office.

In sum, Mr. Siler respectfully requests that the Court reduce his sentence to time served to be followed by a period of home detention. *United States v. Perez,* 2020 WL 1546422, *2 (S.D.N.Y. Apr. 1, 2020) ("The benefits of keeping him in prison for the remainder of his sentence are minimal, and the potential consequences of doing so are extraordinarily grave."); *Rodriguez,* 2020 U.S. Dist. LEXIS 58718 at *26 (following similar logic). Such a sentence would reflect the

11

seriousness of his offense, would adequately serve the need for deterrence, and it would likewise serve the purposes of further promoting his rehabilitation.

## IV. Conclusion

Earon Siler respectfully asks the Court to reduce his custodial sentence to time served and possibly to order him to serve a period of his supervision in home confinement. He also requests that the Court order the government to respond to this motion in an expedited manner and to provide him with a copy of his BOP medical records and the administrative requests he submitted for relief.

Respectfully submitted,

s/ *Michael C. Holley*
MICHAEL C. HOLLEY
Assistant Federal Public Defender
MOLLY ROSE GREEN
Research and Writing Attorney
810 Broadway, Suite 200
Nashville, Tennessee 37203
615-736-5047

Attorney for Earon Siler

## CERTIFICATE OF SERVICE

I hereby certify that on April 28, 2020, I electronically filed this pleading with the U.S. District Court Clerk by using the CM/ECF system, which will send a Notice of Electronic Filing to Philip H. Wehby, Assistant United States Attorney, Office of the U.S. Attorney, 110 Ninth Avenue North, Suite A961, Nashville, Tennessee, 37203.

s/ *Michael C. Holley*
MICHAEL C. HOLLEY

12